**UNITED STATES of America**

**v.**

**Eugene LAWSON et al.**

**Crim. A. No. 71–53.**

United States District Court,
E. D. Pennsylvania.

Oct. 5, 1971.

Robert Ozer, Philadelphia, Pa., for plaintiff.

Louis C. Johanson, Howard L. Criden, Philadelphia, Pa., Julian F. King, Philadelphia, Pa., Edward Bobick, New York City, Charles V. Bell, Charlotte N. C., for defendants.

## OPINION AND ORDER

HUYETT, District Judge.

Defendants are charged with violations of the Federal narcotics laws, 21 U.S.C. § 174, 26 U.S.C. §§ 4704(a), 4705(a), 7237(a), 7237(b). They are allegedly involved in a conspiracy to receive, conceal, transport, and sell heroin. Defendants have filed various pretrial motions which are set out in a complete list attached as Exhibit #1. Since the motions present similar allegations, they will be considered together unless circumstances dictate that a motion be considered separately.

## MOTIONS FOR DISCOVERY, DISMISSAL AND SEVERANCE

Four defendants have filed motions for discovery and inspection pursuant to Fed.R.Crim.P. 16. Since the United States voluntarily has supplied to all defendants transcripts of tapes of the in-

tercepted wire communications, these motions are moot.

■ Eugene Lawson has filed a motion to dismiss the indictment pursuant to Fed.R.Crim.P. 12 on the ground that this indictment places him in jeopardy of prosecution and conviction twice for the same alleged offense. Lawson was arrested on December 23, 1970, charged with possession and transportation of heroin and cocaine on October 6, 1970, and indicted for that offense on February 3, 1971.

Lawson contends that he was also arrested on October 6, 1970, in New Jersey, charged with possession and transportation of narcotics, taken before a Federal Magistrate in New Jersey, bound over to the Grand Jury, and released on bail. No indictment, however, has issued as a result of the October 6, 1970, arrest. Consequently, Lawson has not been placed in double jeopardy since jeopardy does not attach in a non-jury case until the court has begun to hear evidence or, in a jury case, when the jury has been impaneled and sworn.[1] Newman v. United States, 133 U.S.App. D.C. 271, 410 F.2d 259 (D.C. Cir. 1969), cert. den., 396 U.S. 868, 90 S.Ct. 132, 24 L.Ed.2d 121 (1969); United States v. American Oil Company, 296 F.Supp. 538 (D.N.J. 1969).

■ Three defendants have filed motions for a separate trial pursuant to Fed.R.Crim.P. 14. Severance, of course, is within the discretion of the trial court. United States v. Barber, 442 F. 2d 517 (3 Cir. 1971); United States v. Cantor, 328 F.Supp. 561 (E.D.Pa., filed May 26, 1971). The burden is upon the moving defendant to come forward with facts demonstrating that he will be so severely prejudiced by a joint trial that it would amount to denying him a fair trial altogether. United States v. Riccobene, 320 F.Supp. 196, 200 (E.D.Pa. 1970). Furthermore, a general unsupported assertion of prejudice is not enough to justify severance. Williamson v. United States, 310 F.2d 192, 197 (9 Cir. 1962).

■ In the instant case, defendants' assertions that they will be severely prejudiced by a joint trial are merely speculative. They contend that a joint trial will result in the jury (1) hearing evidence which is only admissible as to some defendants, and (2) trying the cases of defendants whose defenses may be antagonistic or inconsistent with each other. Possible prejudice from this source can be prevented, however, by proper instructions to the jury and is not sufficient justification for severance.

The moving defendants also contend that their trials should be severed because very little of the voluminous evidence to be presented by the Government involves them and they will be put to great expense by a joint trial.[2] Such inconvenience must be weighed, however, against the policy favoring joint trials for the sake of judicial efficiency and economy. Joint trials avoid duplicating time-consuming and expensive trials, conserve public funds, diminish inconvenience to witnesses and public authorities, and result in those accused of crime being tried promptly. United States v. Barber, *supra*, 442 F.2d at 529. Thus, inconvenience is insufficient justification for severance.

---

1. James Wright also filed a motion to dismiss the indictment based on double jeopardy. Contrary to Eugene Lawson's situation, however, a jury had been impaneled in the Southern District of New York to try Wright. Consequently, Wright and the United States entered into a stipulation that the trial of Wright be severed from the other defendants in this case and further consideration of Wright's pretrial motions be deferred until the final outcome of proceedings in the Southern District of New York.

2. It is by no means certain that a separate trial would be appreciably shorter than a joint one. The United States accurately states that acts and declarations of co-conspirators would be admissible in a separate trial if the prosecution demonstrated by substantial independent proof the existence of the conspiracy and the defendant's connection with it. *See* United States v. Barrow, 229 F.Supp. 722 (E.D.Pa.1964).

■ Defendant Meadows also contends that his trial should be severed because the United States alleges the commission of a single conspiracy whereas the evidence tends to show more than one conspiracy. He cites United States v. Goss, 329 F.2d 180 (4 Cir. 1964) for the proposition that severance is appropriate in such a situation. In *Goss*, however, the Court admitted that the trial judge could not be aware of this problem "until the Government had completed all of its evidence, for the defect was not apparent from the indictment." 329 F.2d at 184. Similarly, in the instant case any variance between the allegations of the indictment and evidence to be presented is not discernible at this time. Consequently, severance for this reason is premature.

## MOTIONS TO SUPPRESS

All defendants have joined in motions to suppress the telephone communications intercepted by the United States. Testimony and argument were heard at hearings held on August 9, 1971, August 30, 1971 and September 20, 1971.

Upon the application of Robert C. Ozer, Special Attorney, Organized Crime Division of the Department of Justice, and the affidavit of William J. Collins, Special Agent, Bureau of Narcotics and Dangerous Drugs, an Order was entered on March 31, 1970 by John W. Lord, Jr., Chief Judge of this district, authorizing the interception of communications on telephone number 215–747–8140 for a period of twenty days. Based upon a similar application and affidavit, an Order was entered on March 31, 1970 by Mitchell H. Cohen, District Judge for the District of New Jersey, authorizing the interception of communications on telephone number 609–767–8521 for a period of twenty days.

Subsequently, upon application and affidavit of Messrs. Ozer and Collins, another Order was entered by Chief Judge Lord on April 20, 1970 authorizing the interception of communications on telephone numbers 215–747–8140 and 215–747–8141 for a period of fifteen days. Simultaneously, upon application and affidavit of these men, an Order was entered by Judge Cohen on April 20, 1970 authorizing the interception of communications on telephone numbers 609–767–8521 and 215–WA5–4752 for a period of fifteen days.

Pursuant to 18 U.S.C. § 2518(8) (d) inventories were to be served within ninety days of the entry of the original wiretap orders of March 31, 1970. On July 20, 1970, upon the application of J. Shane Creamer, then Special Attorney, Department of Justice, Judge Lord entered an order extending for ninety days the time to serve the inventories pursuant to 18 U.S.C. § 2518(8) (d). On July 30, 1970, Judge Cohen entered a similar extension order with respect to the wiretap he had authorized on March 31, 1970.

On September 21, 1970, upon application and affidavit of J. Shane Creamer, Judge Lord entered an order authorizing the interception of communications on telephone number 215–GR6–0520 for a period of fifteen days. On that same day, upon application and affidavit of Mr. Creamer, Judge Cohen entered an order authorizing the interception of communications on telephone number 215–WA3–5579.

On October 27, 1970, inventories were served with respect to all the wiretaps.

■ Initially, defendant Mayberry attacks the constitutionality of the wiretap statute, 18 U.S.C. § 2510 et seq., on its face and as applied to her. She offers, however, no evidence or authority for this proposition. Furthermore, Judge VanArtsdalen of this Court recently considered a similar challenge to this statute and concluded that it was sufficiently circumscribed to protect the rights of an individual as guaranteed by the Fourth Amendment. United States v. Cantor, supra, at 563, 564; see United States v. Perillo, 333 F.Supp. 914 (D. Del., 1971). That reasoning is sound and shall be followed.

■ Secondly, the defendants contend that the applications for wiretap authorizations were insufficient on their face. A review of the very detailed affidavits,

however, compels the conclusion that the orders authorizing telephone interceptions were supported by an adequate showing of probable cause. The affidavits also support the conclusion that other means of investigation had been exhausted and interception of telephone conversations was necessary to successfully complete the investigation.

 Thirdly, defendants contend that the United States has not adequately demonstrated that it intercepted no calls on telephone number 215–747–8141 during the period in which it had authority to intercept calls only on 215–747–8140. These numbers are both subscribed to by Up-Look Records, a corporation of which defendant Eugene Lawson is principal officer, but the March 31, 1970 order of Judge Lord authorized interceptions on 8140 only. Consequently, Special Agents Edward W. Cassidy and Gary G. Worden were questioned at the hearings concerning the precautions that the United States undertook to insure that no calls were intercepted on 8141 during this period.

The agents testified that the telephone company supplied them with the technical information concerning which wires to connect with their equipment to implement the tap. Agent Worden further testified that the telephone company's information was double-checked for accuracy. The first check consisted of having an agent turn on his receiver at the listening post and dial the number. Since the agent was already on the line, a busy signal was received, thereby verifying that the correct number had been tapped. The second check consisted of having someone outside the listening post dial the particular number. When the ringing came through the monitoring equipment at the listening post, this further verified that the correct number had been tapped. These are standard procedures followed by the government in implementing and verifying its interceptions. It is clear that the United States intercepted conversations only on lines within its court authorization.

 Fourthly, defendants contend that the orders of July 20 and July 30, 1970, extending the time for filing of inventories were invalidly obtained. The statute provides at 18 U.S.C. § 2518(8) (d):

> "On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this sub-section may be postponed."

In the instant case, both petitions for an extension of time contain averments that "the investigation of this narcotics distribution system is presently under a full-scale continuing investigation." This is one of the very justifications contemplated by Congress in enacting a section authorizing the postponement of the serving of an inventory. *See* 2 U.S. Code Cong. & Ad.News, p. 2194 (1968). Consequently, the orders of Judges Lord and Cohen extending the period for serving inventories were issued in compliance with 18 U.S.C. § 2518(8) (d).

 Finally, defendants contend that even if Judge Lord's extension order of July 20, 1970, was validly obtained, the related inventory was not timely filed. The extension order required the inventory to be served on or before October 19, 1970, but it was not served until October 27, 1970. Defendants argue that 18 U.S.C. § 2518(8) (d) must be strictly construed and, therefore, the short delay in filing the inventories necessitates the suppression of the wiretap evidence.

Defendants, however, offer no authority for the proposition that procedures under 18 U.S.C. § 2518 should be interpreted in a manner different from existing search warrant practice. Existing practice with regard to returning and filing search warrants is persuasive authority for determination of procedures under § 2518. The return and filing of a search warrant are ministerial acts, Evans v. United States, 242 F.2d 534 (6 Cir. 1957), cert. denied, 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957), and absent a substantiated claim of prejudice, failure to file a warrant should not invalidate an otherwise lawful search.

United States v. Averell, 296 F.Supp. 1004, 1014 (E.D.N.Y.1969).

The American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Electronic Surveillance, (Approved Draft 1971) deals with the precise question of inventory filing under 18 U.S.C. § 2518 and states at p. 160:

"A failure to make a correct return or to file the inventory, noted below, however, should result in the suppression of evidence only where prejudice is shown."

This statement represents sound procedure policy and is consistent with traditional search warrant practice. Consequently, since the defendants have not even alleged prejudice, they cannot now have the wiretap evidence suppressed because inventories were served eight days late.

## EXHIBIT NO. 1

### MOTIONS FILED BY THE RESPECTIVE DEFENDANTS

Katherine Mayberry—Motion to Suppress Evidence

Eugene Lawson —Motion to Suppress Evidence
Motion to Dismiss Indictment
Motion for Discovery and Inspection

Wilberta Lawson —Motion to Suppress Evidence
Motion for Discovery and Inspection

Bernice Wilcox —Motion to Suppress Evidence
Motion for Severance
Motion for Discovery and Inspection

Willie J. Rhynes —Motion for Severance
Joined in Motion to Suppress Evidence

Walter Meadows —Motion to Suppress Evidence
Motion for Severance
Motion for Discovery and Inspection

Dolores Glover has not been apprehended as of this date.