CAMPBELL, Judge.
The state appeals the trial court’s order granting appellee’s motion to suppress tangible evidence seized during a warrantless search of his person and a vehicle following his arrest. Appellee’s arrest and the subsequent search resulted from surveillance of the vehicle undertaken because of information received from a court-ordered intercept of telephone conversations. Appellee was not a party to these conversations, nor was he a subject of the intercept. Appellee’s motion to suppress did not attack the validity of the application for or the order of intercept but addressed only the validity of the warrantless search.
The information charging appellee was filed August 16, 1979. The parties undertook extended discovery procedures, and jury trial was set for January 8, 1980. On January 4,1980, appellee filed his motion to suppress which was heard on the morning of January 9,1980, the day the case actually came up for trial. At the suppression hearing, appellant sought to present testimony to support the seizure of the evidence sought to be suppressed. The testimony offered was that of an investigator for the state attorney’s office who stated that the arrest of appellee and seizure of the evidence resulted from surveillance of a vehicle initiated because the vehicle was described in the intercepted telephone conversations. Appellee objected to introduction of the testimony on the sole ground that the state had not furnished him a copy of the court order of intercept and the accompanying application at least ten days prior to the hearing pursuant to Section 934.09(8), Florida Statutes. The court granted the motion to suppress, and the state timely appealed. We reverse.
On October 24, 1979, appellee moved for an order of court compelling appellant to disclose, among other things, all applications and orders for electronic or other surveillance of any wire or oral communications in which appellee was named or otherwise referred to. As far as the record shows that motion was never pursued by appellee, and no order was ever entered concerning it.
On November 14, 1979, appellant filed a notice of offer of stipulation in which it offered to stipulate to the entry of an order disclosing all of the wiretap materials “herein available” and moved at the same time for a waiver of the ten day period prescribed by Section 934.09(8). At a hearing on that motion to waive the ten day period, appellant stated it did not intend to use in its case-in-chief any wiretap material against appellee since his name was not mentioned in the wiretaps. Appellant then withdrew the motion to waive the ten day period. At that same hearing, counsel for appellee admitted that in these cases pending against appellee’s co-defendants involving the same or similar charges and at times consolidated with appellee’s case, he had the wiretap information, as appellant had furnished him the materials so that he could make copies of them in his office.
Appellee argues that even though his attorney had the information, because it was not specifically designated to be furnished in his case, appellant is precluded from using information derived from the wiretap, not only in appellant’s case-in-chief, but also in sustaining its burden in appellee’s suppression hearing directed toward the warrantless search. Such a position cannot be sustained. Nowhere does the record reveal how appellee was surprised or prejudiced by the failure of appellant to provide a copy of the application for and order of intercept in this particular case. Appellee’s attorney not only had knowledge of the existence of the intercept but actually had possession of the wiretap material. The record, on the contrary, shows that appellee’s counsel at the suppression hearing anticipates what the testimony offered will be, stating to the court, “but to be perfectly candid with the Court, *1028 the testimony will reveal that he was acquainted with this vehicle as a result of a wire tap [sic] .... ” This certainly does not appear to be a case of willful withholding by the state of the application and order of intercept. Cf., State v. King, 372 So.2d 1126 (Fla. 2d DCA 1979). (The court held that before dismissing an information because of a prosecutor’s discovery violation, the court must find that the violation prejudiced the defendant or was willful.)
There are no Florida cases which we have found or have been referred to that address the effect of a failure to strictly comply with Section 934.09(8), Florida Statutes. However, 18 U.S.C. § 2518(9) is for all intents and purposes identical with Section 934.09(8), and there are several decisions of the federal courts construing that provision.
The leading case is United States v. Woik, 466 F.2d 1143 (8th Cir.1972), wherein the Court, in interpreting the notice provisions of 18 U.S.C. § 2518, analyzed the distinction between a conventional search and a wiretap intercept. In contrasting a conventional search, which is normally preceded by notice, to a wiretap, which to be an effective law enforcement tool depends on secrecy prior to the tap, the court reasoned that the statutory post-wiretap notice requirements were devised to insure that all persons against whom such wiretaps are used will become aware of their existence so that when proper the validity of the application and order for wiretap might be tested.[1] In Woik, supra, the record indicated that the appellee knew of the wiretaps and had access to the wiretap materials. In light of that knowledge the Court stated:
To us the statute is concerned with adequate notice and not formalities. The record demonstrates that the appellees were sufficiently aware of the wiretap so as to be able to seek suppression of the evidence on a number of grounds including the argument that the “probable cause” requirement of the statute had not been satisfied. The appellees had adequate notice in this case, and they have not shown that any prejudice resulted from the failure of the Government to formally serve them with the inventories. See United States v. LaGorga, 336 F.Supp. 190, 194 (W.D.Pa.1971); United States v. Lawson, 334 F.Supp. 612, 616-617 (E.D.Pa.1971).
Inasmuch as the statute has been substantially complied with in that the ap-pellees had actual notice and the appel-lees have not been prejudiced by the delay in formal notification, the evidence should not have been suppressed. This is not to say that the notice requirements may be taken lightly in future cases. We hold only that “whatever violation occurred was surely insufficient in nature and extent to justify the drastic result dictated by the suppression doctrine.” Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 418—419, 91 S.Ct. 1999, 2016, 29 L.Ed.2d 619 (1971) ....
466 F.2d at 1146.
Woik, supra, was cited with approval by the court in United States v. Johnson, 539 F.2d 181 (D.C.Cir.1976), when it said:
[T]he record in this case makes clear that all Appellants had actual notice that their words had been intercepted in the 28 September wiretap. And as we read the precedents advanced by both sides, actual notice is a bar to any suppression argument based on non-compliance with the inventory requirement, at least where the failure to give formal notice was not a deliberate act of either the court or the Government.
It has been freely conceded throughout this proceeding that Mr. Coffman, then attorney for all Appellants, was provided in mid-October 1973, with copies of the affidavits supporting both the 28 September wiretap and the subsequent search warrants, as well as the court orders themselves. It has been further conceded *1029 that these materials reflected “what was done as far as the wire intercept was concerned,” and that during the pre-in-dictment period “everybody knew there was a wiretap.” In fact, the wiretap application contained the names of all but Appellant Matthews, as objects of the gambling investigation. The Government alleges further, and appellants do not contest, that a discovery meeting at which specific wiretap evidence was disclosed, took place well within the ninety day period. It was attended by all but Appellants Madre and Byers.
Moreover, Appellants concede, even as they come before this court, that actual notice of interception was not lacking as to any of them. Nowhere in their written and oral arguments do we find a claim that a lack of formal inventory notice denied any Appellant the opportunity to bring an early challenge to the wiretap procedure applied here. To the contrary, this third theory of appeal rests on a highly formalistic construction of the statute, which would exclude evidence for the most technical forms of non-compliance, however unintentional and however insignificant the effect on the rights of the persons involved. Because we see no purpose in suppressing the fruits of good faith investigative efforts for failure to give formal notice, where it is clear that actual notice has otherwise been timely received, we reject this argument as unpersuasive. We find the precedents dealing with the inventory requirement, under the parallel federal statute, to be fully supportive of this position.
We rely primarily on United States v. Wolk and United States v. Bohn, [508 F.2d 1145 (8th Cir.)], which stand for the proposition that failure to comply with the inventory requirement is not grounds for suppression if the ends of that requirement have otherwise been achieved. Since all Appellants had actual notice well within the ninety day period, and thus had an opportunity to challenge the wiretap while the circumstances surrounding it were still fresh, we see little function that would be served by requiring further formal notice. There being no assertion here of bad faith on the part of the Government, we need not determine whether this principle would hold in the case of deliberate non-compliance.
539 F.2d at 193-94.
United States v. Alfonso, 552 F.2d 605 (5th Cir. 1977), approved Wolk, supra, in holding that constitutional and statutory notice requirements were substantially satisfied when actual notice as contrasted to formal notice was provided to unnamed but overheard individuals in a court-ordered intercept.
Similarly in United States v. Kohne, 358 F.Supp. 1053 (W.D.Penn.1973), in considering the failure of the government to serve copies of the wiretap applications and court orders on all parties as required by 18 U.S.C. § 2518(9), the court stated:
The purpose of 18 U.S.C. § 2518(9) is to provide a defendant with notice so that he can move to suppress wiretap evidence prior to trial. U.S.Code Cong, and Admin.News, 1968, p. 2195. The defendants in this case did move to suppress the wiretap evidence prior to trial, asserting as one of the grounds therefor that the applications for the court orders authorizing the wiretaps did not set forth probable cause. At the hearing on their motions on March 16, 1972, defendants, by their counsel, extensively cross-examined witnesses using the applications and court orders they now complain were not served on them ten days prior to trial. Furthermore, these documents were offered into evidence as exhibits at this hearing, and prior to the hearing had been public records on file in the Office of the Clerk of Court since January 14, 1972. Since the record clearly establishes that defendants had access to these documents almost one year prior to trial and, in fact, moved to suppress the wiretap evidence because of the alleged insuffi-ciencies in them, we find substantial compliance with the statute, and hold that the refusal to suppress the wiretap evidence during the trial was correct. United States v. Wolk, 466 F.2d 1143 (8th Cir. *1030 1972); cf. United States v. Eastman, 465 F.2d 1057 (3d Cir. 1972).
358 F.Supp. at 1057.
Aside from the fact that appellee had actual notice of the application and order of intercept, we feel there is a further reason that his motion to suppress should have been denied. The purpose of the notice required by Section 934.09(8), Florida Statutes, as stated in Kohne, supra, is to provide a defendant notice so that he can move to suppress wiretap evidence. Appel-lee here does not have standing to contest the validity of the application and order for wiretap or the information derived therefrom. Appellee was not a party to any intercepted conversations nor were his premises the site of any electronic surveillance.
In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the Court addressed the issue of standing in a situation similar to that in the instant case. In Alderman, petitioners Alderman and Al-derisio had been convicted of conspiring to transmit murderous threats in interstate commerce. They alleged on rehearing that Alderisio’s place of business had been the subject of electronic surveillance by the government. The government conceded that Alderisio’s conversations had been intercepted by unlawful electronic surveillance but asserted that “Alderman neither participated in any conversation overheard nor had any interest in the places which were the object of the surveillance.” 394 U.S. at 168 n.1, 89 S.Ct. at 963 n.1. The Court held that suppression can only be obtained by those persons whose rights were violated by the search itself, which in a wiretap situation would be those persons whose conversations were intercepted or whose premises were the site of electronic surveillance. Alderman was remanded to the district court for a determination as to whether there was electronic surveillance which violated either of the petitioner’s Fourth Amendment rights; if there was no such violation of a petitioner’s rights, that petitioner would have no standing to challenge the unlawful surveillance.
Alderman v. United States, supra, was the basis for a per curiam opinion in Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 1164, 22 L.Ed.2d 297 (1969), and was more recently a building block for United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), wherein the Court receded from Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), by abolishing “automatic standing” for possessory offenses. Cf., United States v. Payner, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). (The Court held that not only does a petitioner lack standing under the Fourth Amendment to challenge the seizure of documents from a third party, but the supervisory power of the federal courts does not convey to the courts the authority to suppress otherwise admissible evidence illegally seized from a third party.)
Since Albano has no standing to challenge the admissibility of information stemming from the electronic surveillance, the purpose of Section 934.09(8), Florida Statutes (as expressed in Kohne, supra), would not be served by applying the statute to disallow the testimony in this case. Rather, in order to read Section 934.09(8) in conjunction with the rest of Chapter 934 and consistent with its purpose, Section 934.-09(8) must be read as having the nature of a discovery device, its purpose being to give notice of the intercept to parties in the proceeding who did not receive notice pursuant to Section 934.09(7)(e). The state’s noncomplianee with Section 934.09(8) is then essentially a discovery violation, and disallowing testimony because of a discovery violation without any showing of prejudice to the defendant or willfulness on the part of the prosecution is too strong a sanction and constitutes an abuse of discretion in this ease. See Richardson v. State, 246 So.2d 771 (Fla.1971).
For the reasons discussed above, we hold that the testimony regarding the wiretap and information derived from the wiretap is admissible during the hearing on the motion to suppress. We remand to the trial court *1031 for the proceedings consistent with this opinion.
HOBSON, Acting C. J., and OTT, J., concur.

. It is important to emphasize again that appel-lee’s motion to suppress was not directed to the validity of the application and order of wiretaps; his standing to do so will be later discussed.