513 P.2d 1287

STATE of New Mexico, Plaintiff-Appellee,

v.

Gavino PEREA, Defendant-Appellant.

No. 1078.

Court of Appeals of New Mexico.

Aug. 15, 1973.

Richard C. Losh, Albuquerque, for defendant-appellant.

James L. Brandenburg, Dist. Atty., James R. Beam, Asst. Dist. Atty., Albuquerque, for plaintiff-appellee.

## OPINION

HERNANDEZ, Judge.

This is an appeal, taken pursuant to Section 21–10–2.1 subd. A(3), N.M.S.A.1953 (1972 Interim Supp.), from an interlocutory order denying defendant's motion to suppress certain evidence. Defendant alleges two points of error: (1) there was not probable cause for the issuance of the search warrant by which the evidence was discovered, and (2) the search warrant was rendered a nullity for failure to properly execute and return it.

The affidavit upon which the search warrant was issued reads in part as follows:

"The undersigned, being duly sworn, on his oath, states that he has reason to believe that on the person of GAVINO PEREA; on the premises described . . . . there is now being concealed certain property, namely: Heroin. . . . ." "and that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: Officer P. J. Herrera has maintained a periodic surveillance of said residence for a period of approximately two months. During that time Officer Herrera has stopped numerous vehicles and persons coming and going from said residence. They are all known narcotic users and several had fresh needle marks on their arms. Among the subjects stopped were: PETER ANAYA, DOB: 7/4/31, of 2527–A Indian School Rd. NW; GERALD STEVEN DAVIDSON, DOB: 1/19/53; FABIAN VIVIAN GARCIA, DOB; 7/3/47: MARCELLINO GUTIERREZ, DOB: 2/6/38; CHARLES McGUINNES, DOB: 6/17/46; ROBERT C. ARMIJO, DOB: 6/1/34; AMY MARIE BOTHEL, Age: 21, Add: 314 Cornell SE; JOHN HERRERA, DOB: 12/9/44; HORACIO SANCHEZ, DOB: 7/14/34. These subjects and numerous others were stopped and checked by Officer Herrera. Several of the subjects indicated that they had purchased narcotics at said residence from the indicated subject. Based on the information affiants set up surveillance of the said residence which was conducted in conjunction with the activities of Officer Herrera. Affiants did notice a large amount of traffic coming and going from said residence. This traffic was specially heavy in the morning hours. Based on the foregoing information, affiants respectfully request a search warrant be issued for the described structure and the persons living thereon. Affiants are members of the Albuquerque Metro Squad and are sworn police officers. They are registered voters in the State of New Mexico. Surveillance has been made by officers of the Albuquerque Metro Squad during the past 24 hours and numerous people have been observed coming and going from

said residence. All known narcotic users and pushers.

s/ Joseph Parra s/Abenicio Cordova, Jr.
Signature of Affiant

Detectives
Official Title"

The fourth amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution both require that search warrants be issued only after a finding of probable cause, "supported by oath or affirmation." These constitutional mandates have been further elaborated upon in Rule 17, sections (a) through (f) of the New Mexico Rules of Criminal Procedure. Section (f) which pertains to the probable cause requirement reads in part as follows:

". . . 'probable cause' shall be based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. Before ruling on a request for a warrant the court may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such additional evidence shall be reduced to writing and supported by oath or affirmation."

The rules, which the drafters of Rule 41-23-17(f), supra, obviously had in mind, for evaluating supporting affidavits for probable cause are well established. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

1. The affidavits are normally drafted by non-lawyers usually in the midst and haste of a criminal investigation, therefore, technical requirements of elaborate specificity have no proper place in a court's evaluation. United States v. Ventresca, supra; State v. Torres, 81 N.M. 521, 469 P.2d 166 (Ct.App.1970).

2. The determination of whether probable cause exists must be made by the magistrate and not by the police officer; any inferences to be drawn from the statements of the affiants must be drawn by the magistrate. Aguilar v. Texas, supra.

3. Affidavits will be tested by much less rigorous standards than those governing admissibility of evidence at trial. Probable cause may be determined on the basis of evidence which at trial would not be legally competent. Thus, hearsay information, even from an undisclosed informant may form the basis for a probable cause determination so long as there is some reason for believing such information. United States v. Ventresca, supra; State v. Torres, supra.

4. An unsupported statement by an affiant that he believed an informant to be truthful will not, in itself, provide a factual basis for believing the report of an unnamed informant. The affidavit must set forth some of the underlying circumstances supporting the affiants' conclusions and beliefs that the information is credible or that his information is reliable. Aguilar v. Texas, supra; Jones v. United States, supra; United States v. Harris, supra; State v. Lewis, 80 N.M. 274, 454 P.2d 360 (Ct.App. 1969).

The facts in United States v. Ventresca, supra, and United States v. Harris, supra, are particularly analogous to my decision. The Ventresca affidavit described seven different occasions when an automobile, sometimes heavily loaded with sugar and at other times loaded with empty tin cans, was driven into defendant's yard by two other men named in the affidavit. The two men had also been observed loading the car at defendant's house and later unloading full five-gallon cans at another house. Unnamed "investigators" also smelled fermenting mash, heard metallic noises and motor or pump noises coming

from defendant's house. The affidavit concluded: "The foregoing information is based upon personal knowledge and information which has been obtained from Investigators of the Alcohol and Tobacco Tax Division, Internal Revenue Service, who have been assigned to this investigation."

The *Ventresca* affidavit did not specify what part of this information was derived from the personal observations of the affiant and what part was received from other unnamed investigators. The Supreme Court nevertheless found the affidavit sufficient because it "sets forth not merely 'some of the underlying circumstances' supporting the officer's belief but a good many of them." The federal court of appeals had held the affidavit insufficient because it failed to distinguish which of the alleged facts were within the affiant's own knowledge and which were provided by the other investigators and because the affidavit did not state precisely how the officers obtained their information. The Supreme Court discounted this distinction, however, and pointed out that:

> ". . . the detailed observations recounted . . . cannot fairly be regarded as having been made in any significant part by persons other than full-time Investigators of the . . . Internal Revenue Service. *Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."* [Emphasis mine]

The affidavit in *Harris* reads as follows:

> " 'Roosevelt Harris has had a reputation with me for over 4 years as being a trafficker of non-taxpaid distilled spirits, and over this period I have received numerous information [sic] from all types of persons as to his activities. Constable Howard Johnson located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time. This date, I have received information from a person who fears for their [sic] life and property should their name be revealed. I have interviewed this person, found this person to be a prudent person, and have, under a sworn verbal statement, gained the following information: This person has personal knowledge of and has purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past 2 weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is consumed by purchasers in the outbuilding known as and utilized as the 'dance hall,' and has seen Roosevelt Harris go to the other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain the whiskey for this person and other persons'."

The Court upheld the affidavit because it

> ". . . contains an ample factual basis for believing the informant which, when coupled with affiant's own knowledge of the respondent's background, afforded a basis upon which a magistrate would reasonably issue a warrant. *The accusation by the informant was plainly a declaration against interest since it could readily warrant a prosecution and could sustain a conviction against the informant himself."* [Emphasis mine]

The Court went on to point out that when an informant gives information that not only provides the basis for an accusation against a third party but also indicates that the informant himself is guilty of some misconduct, this admission carries its "own indicia of credibility—sufficient at least to support a finding of probable cause to search." See State v. Archuleta, 85 N.M. 146, 509 P.2d 1341 (Ct.App.1973).

■ Applying these rules to the instant case where we have an affidavit that contains:

1. The personal observations of Officer Herrera, made over a two month

period, of numerous known narcotic users coming and going from the premises.

2. His stopping and checking some of these persons and observing fresh needle marks on their arms.

3. The admission by some of them that they had purchased narcotics from the defendant.

4. The personal observations of the affiants of numerous known narcotic users coming and going from the premises.

I conclude that this affidavit provided substantial evidence from which the judge could have determined that there was probable cause for the issuance of the warrant.

■ Defendant bases his allegation of lack of probable cause for the issuance of the search warrant on the ground that Rule 41–23–17(f), supra, permits hearsay but it makes no provision for hearsay upon hearsay or "double hearsay". Because this specific question has not been decided in prior New Mexico appellate decisions, I feel obliged to consider it.

Under § 41–23–17(f), supra, the issue is whether there is a substantial basis for determining credibility and for determining that a factual basis exists. These tests are to be applied regardless of whether the affidavit identifies "double hearsay", and the presence of "double hearsay", in itself, does not render the affidavit legally insufficient. United States v. Smith, 462 F.2d 456 (8th Cir. 1972) states:

". . . when a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. Rather, he is called upon to evaluate this information as well as all other information in the affidavit in order to determine whether it can be reasonably inferred 'that the informant had gained his information in a reliable way.' . . . The magistrate must canvass the affidavit and the informer's tip as a whole . . . to assess its probative value."

See also Dawson v. State, 11 Md.App. 694, 276 A.2d 680, n.3 (1971).

Defendant's second point on appeal is that the return of the search warrant was not properly executed or filed and as a result the warrant was rendered a nullity. He calls my attention to Rule 17(e), New Mexico Rules of Criminal Procedure which provides that a return shall be made promptly within three days after execution of the warrant; that an inventory taken in the presence of the person searched shall be subscribed by an officer; and that the court "shall upon request deliver a copy of the inventory to the person [searched]." He also cites Rule 17(b) New Mexico Rules of Criminal Procedure which provides that the search warrant shall direct a "full-time salaried state or . . . municipal police officer" to conduct the search.

The search warrant in question was signed by District Judge Maloney on July 12th, filed with the district court clerk on July 13th and directed to "any officer authorized to execute this warrant." The return attached to the warrant was filed with the court clerk on July 13th and was signed by one "R. Pollo" over the signature line labeled "Officer." The return recited that on July 13th Pollo had searched the person and premises described, had taken an inventory in the presence of "B. Pounders and H. Lucero" and that a copy of the warrant along with a receipt had been given to the defendant. The jurat on the form had not been completed.

Defendant contends that there is no showing that Pollo, Pounders, or Lucero were persons authorized by Rule 17(b), supra, to execute warrants. Defendant also argues that no copy of the inventory was delivered by the court to the defendant, as required by Rule 17(e), and that the warrant was not substantially in the form approved by the court administrator.

■ Absent a showing of prejudice I will not set aside an otherwise valid search warrant because of defects in the return of the warrant. Those matters of procedure relating to the return of a search warrant

have consistently been held to be ministerial acts which, even if defective or erroneous, do not require a search warrant to be held invalid unless prejudice is shown. United States v. Moore, 452 F.2d 569 (6th Cir. 1971), cert. denied, 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972); United States v. Kennedy, 457 F.2d 63 (10th Cir. 1972); Evans v. United States, 242 F.2d 534 (6th Cir.), cert. denied, 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957); People v. Schmidt, 172 Colo. 285, 473 P.2d 698 (1970).

As a final matter since I have decided that the subject matter of this appeal—the sufficiency of the search warrant affidavit —was properly ruled on by the court below, I do not reach the state's contention that the order allowing this appeal was inappropriately entered.

Affirmed.

It is so ordered.

WOOD, Chief Judge and LOPEZ, Judge (specially concurring).

We concur in Judge Hernandez' discussion of and answer to defendant's second point concerning the return of the search warrant.

We do not join in Judge Hernandez' general discussion concerning applications for search warrants since that discussion is unnecessary to decide the first point raised by defendant. That point concerns double hearsay. The portions of the affidavit quoted show that the affiant officers relied in part on information from Officer Herrera and that Herrera relied in part upon statements made by identified informants. Defendant contends this is hearsay upon hearsay and that such is insufficient for probable cause under § 41–23–17(f), N.M.S.A.1953 (2d Repl.Vol. 9, 1972 (Spec.Supp.). Double hearsay, in itself, does not render the affidavit legally insufficient. United States v. Smith, supra; Dawson v. State, supra. The tests of § 41–23–17(f), supra, are to be applied regardless of double hearsay.

Identified informants stated they had purchased narcotics at the indicated residence from the defendant. These were statements against the informants' penal interests. United States v. Harris, supra; State v. Archuleta, supra.

In addition to those statements, Herrera observed "fresh needle marks" on the informants' arms. Herrera relayed these statements against penal interests and his observation to the affiant officers who, in turn, conducted their own surveillance. ". . . Observations of fellow officers . . . engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." United States v. Ventresca, supra.

The statements against penal interests and the observations of fresh needle marks contained in the affidavit provide a substantial basis for believing the informants and provide a factual basis for the information furnished. The fact that the information was presented to the judge through the affiants, rather than by Herrera, did not render this information unsubstantial. The affidavit showed probable cause and was sufficient for issuance of the search warrant.

On the foregoing basis, we agree the motion to suppress was properly denied.